**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EUGENE WESTMORELAND, | |
| Plaintiff, | Case No. 23-cv-14044 |
| v. | |
| LATOYA HUGHES, in her capacity as Acting Director of the Illinois Department of Corrections | Judge Tharp |
| Defendant. | |

**DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS
FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION**

Dated: March 15, 2024

Defendant Latoya Hughes

KWAME RAOUL
Illinois Attorney General

Kevin Fitzgerald
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle
Chicago, Illinois 60603
(773) 590-6998
*Kevin.Fitzgerald@ilag.gov*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 1

Statutory Background--the ADA, the Rehabilitation Act, and relevant building standards....... 1

Background on NRC ................................................................................................... 2

Procedural Background ............................................................................................... 5

ARGUMENT ............................................................................................................... 6

I.    Plaintiff's motion for class certification must be denied. .............................................. 6

    A.    Plaintiff is not an adequate class representative. .................................................. 8

        1.    Plaintiff failed to exhaust his administrative remedies. ...................................... 9

        2.    Plaintiff lacked Article III standing when he filed his claim. ............................... 12

        3.    Plaintiff's claims are moot, and no exception to mootness applies. ....................... 14

    B.    The Court lacks subject matter jurisdiction over this case, and therefore cannot authorize the substitution of another named plaintiff. .......................................... 17

II.   Plaintiff's motion for a preliminary injunction must be denied....................................... 18

    A.    Plaintiff has no likelihood of success on the merits.................................................. 20

        1.    Plaintiff cannot obtain a preliminary injunction because he transferred out of NRC, and is inadequate to represent the proposed class............................................. 20

        2.    Plaintiff cannot succeed on the merits of his ADA and Rehabilitation Act claims.21

            a.    UFAS applicability rules for detention facilities defeat Plaintiff's substantive claims. ....................................................................................................... 22

            b.    Plaintiff's remaining arguments are insufficient to justify the extraordinary relief they seek....................................................................................................... 24

    B.    Neither Plaintiff nor the class will not suffer irreparable harm absent an   injunction. 26

    C.    The balance of equities and public interest weigh against an injunction here.............. 27

CONCLUSION ............................................................................................................ 29

# TABLE OF AUTHORITIES

Cases

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) .................................................................. 7

*Austin v. Rhoades*, 2021 U.S. Dist. LEXIS 102345 (S.D. Ill. June 1, 2021) ................................. 19

*Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022) ........................................................................ 25

*Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) ................................................................. 7

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) ......................... 8

*Cf. Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................. 27

*Clemons v. Dart*, 168 F. Supp. 3d 1060 (N.D. Ill. 2016) ........................................................ 25

*Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994) ............................................................... 19

*Dickerson v. Durant*, 2023 U.S. Dist. LEXIS 69169 (C.D. Ill. Apr. 20, 2023) ............................. 20

*Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023) ....................................................... 14

*Eddlemon v. Bradley Univ.*, 65 F.4th 335 (7th Cir. 2023) ....................................................... 7

*Flora v. Dart*, 2017 U.S. Dist. LEXIS 74915, (N.D. Ill. May 17, 2017) ..................................... 25

*Foley v. City of Lafayette*, 359 F.3d 925 (7th Cir. 2004) ....................................................... 2

*Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004) ................................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000) ......... 12

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019) ................................... 19

*Harlan v. Scholz*, 866 F.3d 754 (7th Cir. 2017) ................................................................... 28

*Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996) ............................................................. 14, 16

*Holmes v. Fisher*, 854 F.2d 229 (7th Cir. 1988) ............................................................. 15, 28

*Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ........................................... 19, 21

*Koos v. First Nat'l Bank*, 496 F.2d 1162 (7th Cir. 1974) ................................................. 8, 9, 12

*Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998) .................................................................... 26

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577 (7th Cir. 2000) ............. 8

*Lieberman v. Portage Count*, 2019 U.S. Dist. LEXIS 107699 (W.D. Wis. June 27, 2019) .......... 9

*Lockett v. Bonson*, 937 F.3d 1016 (7th Cir. 2019) ........................................................... 10, 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................. 13, 14

*Matthias v. Tate & Kirlin Assocs.*, 2021 U.S. Dist. LEXIS 5191 (W.D. Wis. Jan. 11, 2021) ...... 17

*Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) ................................................................... 20, 28

*Meachum v. Fano*, 427 U.S. 215 (1976) ............................................................................. 28

*Mejia v. Verizon Mgmt. Pension Plan*, 2013 U.S. Dist. LEXIS 45054 (N.D. Ill. Mar. 29, 2013) 16

*Miles v. Anton*, 42 F.4th 777 (7th Cir. 2022) ................................................................... 10, 11

*Moore v. Thieret*, 862 F.2d 148 (7th Cir. 1988) .................................................................... 16

*Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) ................................................................. 14, 15

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) .................................................. 7, 19, 21, 26, 27

*Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532 (7th Cir. 1999) ................................... 12

*Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006) ....................................................... 17

*Portis v. City of Chi.*, 347 F. Supp. 2d 573 (N.D. Ill. 2004) ................................................... 15

*Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002) ........................................................... 11

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) ........................................................................ 28

*Retired Chi. Police Ass'n v. City of Chi.* 7 F.3d 584 (7th Cir. 1993) .................................... 21, 26

*Robinson v. Chicago*, 868 F.2d 959 (7th Cir. 1989) ............................................................. 15

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ............................................................................... 9

*Salley v. Parker*, 2020 U.S. Dist. LEXIS 146697 (N.D. Ill. Aug. 14, 2020) ........................... 11, 12

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) ............................................................ 26
*Stanek v. Saint Charles Cmty. Unit Sch. Dist No. 303*, 2017 U.S. Dist. LEXIS 198374 (N.D. Ill. Dec. 1, 2017) ...................................................................................................... 15
*Strominger v. Brock*, 592 F. App'x 508 (7th Cir. 2014) ............................................... 13
*Turner v. Safley*, 482 U.S. 78 (1987) .......................................................................... 28
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 8
*Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998) ............................................. 15, 17, 18
*Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) ............................................................................................................... 19
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................... 19
*Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004) ............................... 13

**Statutes**
18 U.S.C. § 3626(a)(1)(B) ............................................................................................. 20
18 U.S.C. § 3626(a)(2) ................................................................................................. 20
29 U.S.C. § 794 ............................................................................................................. 2
42 U.S.C. § 12131 ........................................................................................................ 2
42 U.S.C. § 1997e(a) .................................................................................................. 6, 9

**Rules**
Fed. R. Civ. P. 15(a) .................................................................................................... 16
Fed. R. Civ. P. 23(a)(4) ................................................................................................. 8

**Regulations**
20 Ill. Admin. Code § 504.800 ...................................................................................... 9
20 Ill. Admin. Code § 504.830(b) ............................................................................... 10
20 Ill. Admin. Code § 504.870(a) ............................................................................... 12
28 C.F.R. § 35.151(c) (1993) ....................................................................................... 13
28 C.F.R. § 35.151(c)(1) ............................................................................. 2, 13, 21, 24

Plaintiff alleges the Illinois Department of Corrections, through its Acting Director sued in her official capacity, violates the ADA because the showers at the Department's Northern Reception Center ("NRC"), which are located down the hall from inmate cells, are not built consistent with the specific structural metrics described in the Uniform Federal Accessibility Standards or the 1991 Standards for Accessible Design. Plaintiff therefore asks the Court to certify a class of "all individuals who are or will be held at the NRC prescribed a crutch, cane, wheelchair, or walker by a prison medical provider," and enter a preliminary injunction "requiring the IDOC to establish a formal process for wheelchair users to request and obtain assistance from medical staff when showering pending resolution of the request for permanent injunctive relief"—*a process that already exists.*

Plaintiff's motions for class certification and injunctive relief must be rejected. At the outset, Plaintiff is an inadequate class representative because (a) he has admitted to a failure to exhaust administrative remedies, (b) he lacked Article III standing when he filed suit, and (c) his claims are in any case moot, and no exception to mootness applies. This alone requires that both his motion for class certification and his motion for preliminary injunction be denied. Plaintiff also fails to establish *any* of the requirements to obtain a preliminary injunction. First, he is wrong on the substantive law—NRC is fully compliant with UFAS, which establishes special rules for detention facilities that exempt NRC showers from the specific requirements that Plaintiff claims apply. Second, Plaintiff cannot show a likelihood of irreparable harm, or that the public interest or balance of equities weighs in his favor. His motions must therefore be denied.

## BACKGROUND

**Statutory Background--the ADA, the Rehabilitation Act, and relevant building standards**

Title II of the ADA forbids discrimination in the provision of services, programs, and

1

activities by public entities on the basis of an individual's disability. 42 U.S.C. § 12131. Relatedly, the Rehabilitation Act prohibits any disabled individual from being "excluded from the participation in, be[ing] denied the benefits, of, or subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The relief available under both statutes is coextensive. As one claim rises or falls, so too does the other. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) ("Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims.").

A facility built between 1992 and 2010 satisfies the ADA and Rehabilitation Act if it complies with either the Uniform Federal Accessibility Standards ("UFAS") (Exhibit 1), or the 1991 Standards for Accessible Design (the "1991 Standards") (Exhibit 2). 28 C.F.R. § 35.151(c)(1) ("If physical construction or alterations commence after July 26, 1992, but prior to September 15, 2010, then new construction and alterations subject to this section must comply with either UFAS or the 1991 Standards."). Even if a facility constructed in this period does not comply with those structural requirements, it does not necessarily violate the ADA or Rehabilitation Act—"Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1).

**Background on NRC**

NRC is one of four reception centers operated by the Illinois Department of Corrections ("IDOC"). Exhibit 3, Declaration of Darrin Hunter ("Hunter Decl."), ¶ 2. IDOC operates additional reception centers at Graham, Menard, and Logan (with Logan dedicated to women). *Id*. ¶ 3. NRC functions as the largest adult male intake and processing unit for IDOC, serving the entire state of Illinois. *Id*. ¶ 4. While NRC focuses primarily on serving northern Illinois, NRC also accepts

intakes from other areas of the State. *Id.* ¶ 5. Stateville Correctional Center is the parent institution for NRC, with the same warden overseeing Stateville and NRC. *Id.* ¶ 6. In addition to handling the intake of individuals who are new to IDOC, NRC also houses individuals in custody who are temporarily moved to NRC for court writs, to receive medical care in the Chicago area, to attend court proceedings, or for Mandatory Supervised Release violators awaiting probable cause hearings and subsequent reviews as scheduled and conducted by the Prisoner Review Board. *Id.* ¶ 7. NRC is designed and optimized for short-term stays, specifically for evaluations and classifications of new intakes and temporary stays. *Id.* ¶ 8. NRC was constructed in the early 2000s, and began operations in 2004. *Id.* ¶ 9.

Every person who enters a reception center, including NRC, as an intake receives a variety of screenings, including drug, alcohol, dental, medical, physical, educational, security and mental health. Hunter Decl., Ex. 3, ¶ 10. NRC staff typically conduct these screenings within the first few days after an individual in custody arrives at the facility. *Id.* ¶ 11. Every individual in custody who enters NRC as a new arrival goes through a classification process. *Id.* ¶ 12. Clinical Services will complete a pending case review to evaluate and identify the individual's length of incarceration, criminal offense, security level, the need for separation from other individuals, escape risk, security threat group affiliation, aggression level, and programming needs. *Id.* ¶ 13. After the intake and classification process and is complete, Clinical Services makes a recommendation for placement to the Transfer Coordinator's Office (TCO), who makes the final determination of placement. Once the TCO determines an appropriate placement to a parent facility and housing space becomes available there, the individual in custody is transferred to that parent facility. *Id.* ¶ 14.

NRC typically receives more than 1,200 individuals per month, and typically transfers approximately the same number of persons it intakes each month. *Id.* ¶ 15. Because housing at

NRC is intended to be temporary, NRC offers limited privileges and has limited space for secure out-of-cell activities. *Id.* ¶ 16. NRC contains approximately 932 total cells, with a capacity of approximately 1,800 persons. *Id*. ¶ 17. The facility, which is entirely within a single building, includes 24 cell houses, and each cell house contains three levels, referred to as galleries. *Id*. ¶ 18. Within each cell house, two cells on the first level are accessible cells designated for use by persons with disabilities, incorporating accessibility features such as handles next to lavatories. *Id*. ¶ 19.

Relevant to this case, showers are typically provided up to twice a week. *Id*. ¶ 22.[1] Two shower rooms are located at the end of each gallery, meaning that a total of six shower rooms are located within each cell house. *Id*. ¶ 20. Persons in the custody of NRC do not have direct access to these showers, and NRC showers are not incorporated into prisoner cells. *Id*. ¶ 21. Rather, staff escort individuals in custody to the showers at the end of the gallery. *Id.* Instead, NRC operates a rotating schedule for showers. Corrections security staff will go cell-by-cell through that scheduled gallery, offering each individual the opportunity to shower. *Id*. ¶ 24. If the residents of a cell choose to take that opportunity, they are removed from their cell, and escorted by security staff to a shower room at the end of the gallery, or on a different gallery in the cell house. *Id*. ¶ 25. When their showers are complete, they are then escorted by security staff and returned to their cells. *Id*. If an individual is unable to accomplish any of the tasks associated with showering, medical or other corrections staff a process exists through which they can ask for assistance from appropriate NRC staff.  *See* Exhibit 4, Deposition of 30(b)(6) Designee Lidia Diaz ("Diaz Dep."), at 57:13–19, 80:4–20.

NRC also contains an infirmary and mental health crisis care unit, which together contain

---

[1] Showers may not always be provided as scheduled due to operational needs. Missed showers are subsequently rescheduled. Hunter Decl., Ex. 3, ¶ 23.

an additional 14 cells. Hunter Decl., Ex. 3 ¶ 26. Three of the cells in the infirmary are accessible cells, containing features such as lavatory handles. *Id*. ¶ 27. In addition, each of the accessible cells in the infirmary also contains a roll-in roll-out shower inside the cell itself. *Id*. ¶ 28.

In the two-and-a-half-year period between May 2021 and December 2023, a total of approximately 130 individuals have been housed at NRC who were designated at that time or later to use a wheelchair. *See* ECF 40-1 at 2. While the number of individuals using wheelchairs staying at NRC varies over time, on any given day NRC may be housing between six and ten individuals using wheelchairs. *See* Diaz Dep., Ex. 4, at 70:17–23.

**Procedural Background**

On September 22, 2023, Plaintiff was sentenced to a term of 3.5 years in the custody of the Illinois Department of Corrections. Compl., ECF 1, ¶ 9. Before entering NRC, Plaintiff was in the custody of the Cook County Sheriff at Cook County Jail. *Id.* ¶ 2. On September 24, 2023, *while still in the custody of the Cook County Sheriff*, Plaintiff filed suit against IDOC's Acting Director Latoya Hughes, alleging that conditions at NRC violated the ADA and Rehabilitation Act. *Id.* Plaintiff sought to represent a class defined to include "all individuals who are or will be held at the NRC prescribed a crutch, cane, or wheelchair by a prison medical provider." *Id.* ¶ 18. Two days later, on September 26, 2023, Plaintiff was actually transferred to NRC. Decl. of Eugene Westmoreland, ECF 40-10, ¶ 3. Plaintiff was housed at NRC until November 9, 2023, at which time he was transferred to Taylorville Correctional Center. *See* Hunter Decl., Ex. 3, ¶ 29.

On October 3, 2023, Plaintiff filed a Motion for Class Certification and Memorandum in Support. ECF 6, 7. Plaintiff asks the Court to certify a class of "all individuals who are or will be held at the NRC prescribed a crutch, cane, wheelchair, or walker by a prison medical provider." ECF 7 at 10. On November 3, 2023, Plaintiff moved for a preliminary injunction, asking that the

"Court direct the IDOC to propose a process for a wheelchair-user, upon request, to be assisted by trained medical professionals in and out of the "plastic shower chair" and in and out of the shower stall." Motion for Preliminary Injunction, ECF 13, ¶ 11. On November 9, 2023, the Court took Plaintiff's motions for preliminary injunction and class certification under advisement, authorized limited discovery, and set a briefing schedule for further proceedings as to both motions. *See* Minute Entry dated December 1, 2023. On March 1, 2024, Plaintiff filed his combined Update to Motion for Preliminary Injunction and Motion to Certify Class, ECF 40.

In parallel, on November 9, 2023, Acting Director Hughes filed a motion to dismiss, arguing that because Plaintiff had filed suit before being housed at NRC, his claims failed for two separate legal reasons. *See* Mem. in Supp. of Mot. to Dismiss, ECF 17. *First*, Defendant argued that Plaintiff's decision to file his suit before being incarcerated by the Department meant he lacked Article III standing—he had not suffered an injury in fact, any injuries could not be traced back to Defendant, and it was merely speculative that his alleged injury would be redressed by a favorable decision. *Id.* at 5–6. *Second*, Acting Director Hughes pointed out that Plaintiff's pre-incarceration lawsuit meant he did not, and could not have, exhausted his administrative remedies as required by 42 U.S.C. § 1997e.[2] *See id.* at 6–7. Defendant's motion to dismiss is now fully briefed. *See* Minute Entry dated Feb. 27, 2024.

## ARGUMENT

### I.    Plaintiff's motion for class certification must be denied.

The Court should deny Plaintiff's request to certify a class consisting of "all individuals who are or will be held at the NRC prescribed a crutch, cane, wheelchair, or walker by a prison

---

[2] 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

medical provider." ECF 7, at 1. First, Plaintiff is not an adequate class representative because he is subject to at least three defenses that are unique to him—failure to exhaust his administrative remedies, lack of standing when he filed suit, and moot claims that cannot be saved by the "inherently transitory" exception to mootness. Second, because Plaintiff lacked Article III standing when he filed this case, this Court lacks subject matter jurisdiction over this action, and Plaintiff's counsel may not revive Plaintiff's claims through substitution of a new proposed named plaintiff in Plaintiff's stead.

"To obtain class certification, a plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b)." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). "Failure to meet any of the Rule's requirements precludes class certification." *Id.* "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338–39 (7th Cir. 2023). "The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020).

Rule 23(a) requires that (1) a class be "so numerous that joinder of all members is impracticable (numerosity)"; "(2) there are questions of law or fact common to the class (commonality)"; "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality)"; and "(4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). In addition to these requirements, the class must satisfy one of four conditions listed in Rule 23(b)." *Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017). Rule 23(b)(2) requires the Plaintiff to show that "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011). And as the Seventh Circuit has recognized, "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000).

### A. Plaintiff is not an adequate class representative.

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . ., then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974). In other words, a plaintiff "cannot be an adequate representative of the class . . . if [she] is subject to a defense that couldn't be sustained against other class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). This requirement is independent of the merits of the suit. In *CE Design*, the Seventh Circuit vacated a class certification order for lack of adequate representation because the named plaintiff faced a defense related to her credibility that did not apply to all potential class members. The court noted that the "merits are not before the appellate court," because the "only question we can consider is whether, however meritorious the suit itself may be, the claim of the class representative may be subject to a defense . . . that makes it an inappropriate representative of the class because other class members may not be subject to the same defense, or perhaps to any defense." *Id.*

Here, Plaintiff is subject to at least three unique defenses: (a) failure to exhaust

administrative remedies; (b) lack of standing to sue when he filed his claim; and (c) mootness. Each of these defenses is sufficient to defeat his claims and render him an inadequate class representative. And while Plaintiff may dispute the extent to which these defenses are actually fatal to his individual claims, even the *existence* of these defenses as colorable arguments precludes class certification here. As the Seventh Circuit held in *Koos*, even an "arguable defense unique to a named plaintiff" renders then an inadequate class representative. 496 F.2d at 1164.

### 1.     Plaintiff failed to exhaust his administrative remedies.

Plaintiff cannot be an adequate class representative because he filed his case before exhausting his administrative grievances. The PLRA is clear: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the language of the statute is "mandatory." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Applying this rule, the court in *Lieberman v. Portage Count* denied class certification because the named plaintiff, Lieberman, "did not exhaust his administrative remedies for those claims, and Lieberman cannot serve as class representative on a claim that he doesn't have the right to bring himself."). 2019 U.S. Dist. LEXIS 107699, at *13–15 (W.D. Wis. June 27, 2019).

Plaintiff admits he did not avail himself of any administrative remedies prior to filing this case. *See* Response in Opp. to Def's Mot. to Dismiss, ECF 21, at 9–11. Instead, Plaintiff contends that he was not obligated to exhaust at all. The reason for this, Plaintiff says, is that such remedies were "unavailable" to him because he had just been sentenced, and had not yet been transferred into the custody of IDOC or NRC. *Id.* at 9. Because "the IDOC's grievance procedure applies only 'to offenders assigned to correctional facilities within the [Illinois] Department of Corrections," Plaintiff says, those procedures were unavailable to him between his sentencing on September 23,

2023, and his transfer to NRC on September 26, 2023. *See id.* at 9 (quoting 20 Ill. Admin. Code § 504.800).

Plaintiff's theory that a *future* prisoner can evade the exhaustion requirements of the PLRA by filing lawsuits before they are incarcerated about things that have not happened yet is without support in legal precedent, statutory text, or statutory intent. No case has ever held in favor of Plaintiff's novel argument, and Plaintiff certainly has not pointed to one. *See* Response in Opp. to Def's Mot. to Dismiss, ECF 21, at 9–11. Plaintiff's novel theory also is incompatible "with the primary purpose of the exhaustion doctrine: [t]o alert[] the prison officials to the existence of the problem and afford[] an opportunity to repair the injury." *Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019).

Well-established Seventh Circuit law also defeats Plaintiff's argument. The Seventh Circuit has recognized two types of circumstances in which administrative remedies might be unavailable: (a) where "a remedy is 'officially on the books' but the remedy is incapable of use *in practice*, perhaps because the prison's grievance processes have not been maintained or are unduly difficult to navigate"; and (b) "if a remedy for an issue is not 'officially on the books'—that is, provided for in the text of the written grievance policy—in the first place." *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022).

The situation in this case does not fit into either category of "unavailability." A remedy for Plaintiff's alleged issues plainly exists "in the text of the written grievance policy." *Id.* Indeed, IDOC regulations specifically provide that "[g]rievances alleging discrimination based on disability or a request for an accommodation based upon disability shall be forwarded to the facility ADA Coordinator. If deemed an ADA issue, the facility ADA Coordinator shall conduct the investigation as deemed appropriate and make written recommendations to the Chief

Administrative Officer for resolution of the grievance." 20 Ill. Admin. Code § 504.830(b). Nor is this a case where a remedy is "incapable of use in practice." *Miles*, 42 F.4th at 780. All Plaintiff would have had to do to successfully file a grievance was wait until September 26, 2023, the day of his arrival at NRC, and then submit a grievance. That Plaintiff would have had to wait an additional 48 hours to file this grievance beyond the date on which he filed his Complaint does not render it "unavailable." Indeed, it is well established that to "exhaust remedies, a prisoner must file complaints and appeals *in the place, and at the time, the prison's administrative rules require.*" *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (emphasis added); *see also*, *e.g.*, *Lockett*, 937 F.3d at 1025 (same). Here, the required "place" was at an IDOC facility (such as NRC), and the "time" was after his arrival at that facility.

Citing three grievances filed by *other* offenders in 2013, 2017, and 2021, Plaintiff has argued that the grievance process was "unavailable" to him because "there is evidence the IDOC will not process a grievance regarding inaccessible showers as an 'emergency,'" and because a grievance might not be fully processed while Plaintiff was still in NRC. *See* Resp. in Opp. to Plaintiff's Mot. to Dismiss, ECF 21, at 10. Plaintiff's "evidence," however, defeats his argument. Rather than demonstrate that remedies are unavailable at NRC, this record shows that procedural remedies *are* available, and have been processed and addressed by NRC staff. *Id.* As the Seventh Circuit has reasoned, "the prison offered a complaint process, which [was] used, plus an appeal, which [was taken]. How can it be that administrative procedures actually used, leading to a decision . . ., were 'unavailable'?" *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004).

Plaintiff's unavailability argument based on speculation that his grievances might not be processed while he is still at NRC also falls short. In *Salley v. Parker*, Judge Seeger considered and rejected a similar argument. 2020 U.S. Dist. LEXIS 146697, at *1 (N.D. Ill. Aug. 14, 2020).

Specifically, Judge Seeger ruled that a plaintiff was required to complete the process of exhausting his administrative remedies regarding conditions at NRC even though that plaintiff left NRC after only 18 days, and the process of grieving alleged issues relating to NRC had not yet been completed at the time of his departure. Judge Seeger further noted that Illinois rules establish a specific path allowing inmates to grieve conditions at facilities they have already left: "A prisoner who transfers to a new facility can submit a grievance to the ARB about the old facility." Indeed, the Illinois code provides for a specific process prisoners can use "when grieving: . . . (4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." *Id*. at *20 (quoting 20 Ill. Admin. Code § 504.870(a)). This procedure would have been available to Plaintiff here just as it was available in *Salley*, and the same result is required here.

Plaintiff's failure to exhaust administrative remedies is fatal to his claim. *See Koos*, 496 F.2d at 1164. Moreover, this bar to Plaintiff's claims cannot be cured even if Plaintiff attempts to retroactively exhaust now, since exhaustion must be measured at the time of *filing*. *See Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999) (reversing and remanding for dismissal when, at the time the district court was ruling on the motion to dismiss, the inmate had fully exhausted his administrative remedies but had not done so at the time of filing). Consequently, Plaintiff is not an adequate class representative, and his class certification motion must be denied.

### 2. Plaintiff lacked Article III standing when he filed his claim.

As Defendant previously showed, Plaintiff also lacked Article III standing when he filed this case. Mem. in Supp. of Motion To Dismiss, ECF 17, at 5–6 (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180–81 (2000)); Reply in Support of Mot.

to Dismiss, ECF 23, at 1–2. Plaintiff's only response is to imply that a failure to strictly conform to applicable building standards is a *per se* violation of the ADA and Rehabilitation Act, and that consequently, it was "obvious" that Plaintiff would be harmed upon arrival at NRC. Opp. to Mot. to Dismiss, ECF 21 at 5–8.

Plaintiff fails to carry his burden of demonstrating Article III standing. *See Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) ("the party invoking federal jurisdiction, bears the burden of establishing standing."). Plaintiff's argument falls short because the alleged harm Plaintiff faced was "conjectural" and "hypothetical," rather than actual or imminent, at the time he filed his suit. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). By the terms of applicable federal law, "[d]epartures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." *See* 28 C.F.R. § 35.151(c)(1). As the Seventh Circuit has recognized, "applicable federal regulations provided state prison officials with reasonable flexibility in complying with accessibility standards." *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014) (citing 28 C.F.R. § 35.151(c) (1993)). Although Plaintiff contends he knew the dimensions of all shower facilities at NRC prior to filing this case, he had no way of knowing whether NRC was implementing measures inconsistent with UFAS or the 1991 Standards that would have provided him with equivalent access. *See* Compl., ECF 1, at *passim*. Rather, his complaint was based on a conjecture that the Defendant would, in the future, not successfully comply with federal law through a more "flexible" approach. *Id.* In other words, Plaintiff's complaint was based on the purely conjectural assumption that no appropriate measures would be put in place for him (or others) once he arrived at NRC. *Id.*

Because any harm Plaintiff sought to litigate was therefore "hypothetical" and

13

"conjectural" when he filed this suit, Plaintiff lacked Article III standing. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 515 (7th Cir. 2023) (rejecting claim for injunctive relief as not "imminent" where "the risk of future injury is thus nowhere near 'certainly impending'"); *see also Lujan*, 504 U.S. at 571 (holding that when a claim is "conjectural" then "there is no standing"). And because Plaintiff's harm was purely conjectural when he filed, that hypothetical harm could not be fairly traced to the action of Acting Director Hughes, nor was there any reason to think Plaintiff's conjectural injuries could be redressed.

### 3. Plaintiff's claims are moot, and no exception to mootness applies.

Plaintiff admits he is no longer incarcerated at NRC. *See* Plaintiff's Update, ECF 40, at 2. His claims for injunctive relief are therefore moot unless some exception to mootness applies. *See, e.g.*, *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). In an attempt to save his claim, Plaintiff relies on the "inherently transitory" exception to mootness recognized in *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010). Plaintiff says that this exception applies to any proposed class representative whose claims have been mooted, including himself, if "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." Update, ECF 40, at 3 (quoting *Olson*, 594 F.3d at 582).

Plaintiff misstates the law on the inherently transitory exception to mootness, which does not apply to him and cannot salvage his moot claims here. Specifically, any exception to mootness, including the "inherently transitory" exception on which Plaintiff relies, applies only to a plaintiff who had Article III standing and was a member of the class they sought to represent *on the day they filed suit*. *Olson* itself makes clear that the inherently transitory exception applies only where a plaintiff "seeks to keep the claim alive beyond his individual claim to certify the class." 594 F.3d

at 584. It does not apply, in other words, to a plaintiff *that never had a valid class or individual claim to begin with. See id.*; *see also Portis v. City of Chi.*, 347 F. Supp. 2d 573, 577 (N.D. Ill. 2004) (precedent "never went so far as to allow class certification to revive a case that was 'dead on arrival' . . . . and "assumed that the plaintiff's own claim was live when the suit commenced").

This perspective is consistent with a long line of Seventh Circuit caselaw holding that the exceptions to mootness in a class context apply only to plaintiffs *that had a valid class claim when they filed their complaint*. For example, in *Walters v. Edgar*, the Seventh Circuit affirmed the dismissal of a class claim where the putative class representatives "lacked standing when they filed the suit rather than losing standing" at a later date. 163 F.3d 430, 437 (7th Cir. 1998). In *Robinson v. Chicago*, the Seventh Circuit confirmed that for a plaintiff to invoke class-based exceptions to mootness "a representative's claim must at least be live when he files the case." 868 F.2d 959, 968 (7th Cir. 1989). And in *Holmes v. Fisher*, the Seventh Circuit instructed:

> To permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions. And why? [The plaintiff] can pursue his claim for damages, and the precedent will set the rule to be followed in the future. Or some other litigant may file suit with a live claim. There is no need to throw away a venerable constitutional rule just to retain a replaceable champion.

854 F.2d 229, 233 (7th Cir. 1988).

Multiple judges in this district have relied on similar reasoning to conclude that plaintiffs who lacked live class claims on the day they filed their cases cannot rely on the "inherently transitory" exception to mootness. For example, in *Stanek v. Saint Charles Cmty. Unit Sch. Dist No. 303*, Judge Alonso rejected the argument of a litigant attempting to invoke the "inherently transitory" exception, ruling that the exception could not apply if the proposed named plaintiffs were not "members of the proposed class at the time they first raised their proposed class claims." 2017 U.S. Dist. LEXIS 198374, at *22–23 (N.D. Ill. Dec. 1, 2017). This reasoning and ruling

15

applies to Plaintiff with equal force. It is beyond dispute that Plaintiff had not yet arrived at NRC when he filed his complaint containing his class claim, and could not yet have received any prescription for a wheelchair from any NRC medical providers. *See* Compl., ECF 1, ¶ 2. Plaintiff therefore was not a member of his proposed class of "all individuals who are or will be held at the NRC prescribed a crutch, cane, or wheelchair by a prison medical provider." *Id.* ¶ 18.

Similarly, in *Mejia v. Verizon Mgmt. Pension Plan*, Judge Leinenweber considered an attempt to rely on the inherently transitory exception. Judge Leinenweber rejected *Mejia* plaintiffs' arguments, writing that the claims did "not fit within the inherently transitory doctrine because the doctrine applies generally to situations in which the named plaintiff had standing when he filed the suit, but lost that standing prior to the court certifying the class." 2013 U.S. Dist. LEXIS 45054, at *15 (N.D. Ill. Mar. 29, 2013). This ruling applies with equal force to Plaintiff, who lacked Article III standing on the day he filed his suit, as discussed above.[3]

In sum, Plaintiff's claim for injunctive relief is moot because he is no longer at NRC, and no exception to mootness applies. The existence of this defense to his individual case renders him an inadequate representative for the class he wishes to represent, and requires the Court to deny his motion for class certification.

---

[3] Plaintiff does not argue that any other exception to mootness applies to his case. *See* Update, ECF 40, at 2. Nor could he have succeeded on such an argument had he tried. The "capable of repetition" exception cannot apply because there is no expectation that Plaintiff will again be housed at NRC. *See Higgason*, 83 F.3d at 811 ("the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality."). Other theories are foreclosed by Seventh Circuit law holding that "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988).

**B.**     **The Court lacks subject matter jurisdiction over this case, and therefore cannot authorize the substitution of another named plaintiff.**

In *Walters v. Edgar*, the Seventh Circuit established an exception to the typical rule that new proposed class representatives may be substituted into a case by amendment pursuant to Fed. R. Civ. P. 15(a). *See Walters*, 163 F.3d at 432–33. Specifically, such substitutions are *not* allowed if federal jurisdiction never attached in the first place because the initial plaintiff or plaintiffs lacked Article III standing to sue. *Id. Walters* concerned a 14-year-old class action brought by a number of Illinois inmates that was dismissed after the United States Supreme Court issued an opinion in an unrelated case showing that the named *Walters* plaintiffs never had standing to sue. *Id.* at 432. The trial court dismissed the case and denied leave to substitute in new plaintiffs. *Id.*

The *Walters* plaintiffs appealed, but the Seventh Circuit affirmed. *Id.* at 437. The Seventh Circuit specifically rejected *Walters* plaintiffs' argument that other class members with standing should have been substituted as new class representatives. *Id.* at 432. Instead, the Seventh Circuit held that "if the named plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing," thus dismissing the argument that "jurisdiction can be preserved even though the named plaintiffs lacked standing when the suit was filed." *Id.* at 432–33. Subsequent decisions by the Seventh Circuit and its trial courts have repeatedly reaffirmed this holding. *See*, *e.g.*, *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) (ruling "substitution for the named plaintiffs is allowed" "[u]nless jurisdiction never attached, as in *Walters v. Edgar*"); *Matthias v. Tate & Kirlin Assocs.*, 2021 U.S. Dist. LEXIS 5191, at *13 (W.D. Wis. Jan. 11, 2021) ("Other class members cannot be substituted as class representatives" where "the named plaintiffs lacked standing when they filed the suit.").

*Walters* and its progeny require that any motion Plaintiff may make for substitution of new class plaintiffs must be rejected. As described above, when Plaintiff filed his complaint he was not

yet housed at NRC. Consequently, his allegations of harm were hypothetical and conjectural, and his alleged harms could not be fairly traced to Defendant and could not be redressed. Plaintiff therefore lacked Article III standing when he filed this suit. And under *Walters*, the Court lacks jurisdiction to authorize a substitution of new named plaintiffs, and must dismiss this case. Plaintiff's failure to establish Article III standing at the outset means that absent dismissal, all future proceedings would be at risk of vacatur at any time in the future. *See Walters*, 163 F.3d at 437 (vacating fourteen years of proceedings because "the district court never acquired jurisdiction over the present suit").

All of these reasons, and any of them, defeat Plaintiff's motion for class certification.

## II. Plaintiff's motion for a preliminary injunction must be denied.

Plaintiff asks the Court to enter a preliminary injunction "requiring the IDOC to establish a formal process for wheelchair users to request and obtain assistance from medical staff when showering pending resolution of the request for permanent injunctive relief." Mot. for Preliminary Injunction, ECF 13, at 9. Plaintiff premises his motion on an assertion that NRC shower rooms are subject to the specific structural requirements of the UFAS and the 1991 Standards, but fail to comply with those strict structural requirements. Plaintiff is wrong. Because NRC showers are not incorporated into the NRC general population cells, UFAS provides that they are not required to comply with the structural requirements of UFAS. Consequently, Plaintiff cannot show that NRC is not in compliance with the ADA, and has no likelihood of success on the merits. Not only that, but Plaintiff cannot demonstrate any likelihood of irreparable harm, or that the balance of equities and harms weighs in his favor. In addition, Plaintiff's motion must be rejected because he cannot obtain injunctive relief on his own behalf, and cannot adequately represent the proposed class.

A "preliminary injunction is an exercise of a very far-reaching power, never to be indulged

in except in a case clearly demanding it." *Orr*, 953 F.3d at 501. "[A]n applicant for preliminary relief bears a significant burden": she must make a "'strong' showing" that it is likely to succeed on the merits; "that 'irreparable injury is likely in the absence of an injunction'"; "the balance of equities must tip in [the applicant's] favor"; and the "injunction [must be] in the public interest." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008)) (cleaned up). Besides needing to show a "strong" likelihood of success on the merits to justify a preliminary injunction, plaintiffs also must show they will "likely suffer irreparable harm" absent injunctive relief. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)). A "mere possibility of harm" is insufficient. *Id.* And under the required balancing analysis, plaintiffs who are less likely to win on the merits must make a stronger showing on the balancing of harms. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). In conducting this analysis, the court "must balance the competing claims of injury and must consider the effect on each party of granting or withholding the requested relief," paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "Injunctive relief, whether a temporary restraining order or preliminary injunction, is appropriate only if it addresses a matter presented in the underlying suit and seeks relief of the same character sought in the underlying suit." *Austin v. Rhoades*, 2021 U.S. Dist. LEXIS 102345, at *23 (S.D. Ill. June 1, 2021) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).

The standard in this case is heightened by Plaintiffs' request for a mandatory injunction. The "purpose of a temporary restraining order and ultimately a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case." *Dickerson v. Durant*,

2023 U.S. Dist. LEXIS 69169, at *10 (C.D. Ill. Apr. 20, 2023). Requests for a "mandatory preliminary injunction," such as the relief Plaintiffs seek here (to compel the Department to take immediate actions), are "cautiously viewed and sparingly issued." *Id.; see also Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

In addition to these traditional injunction factors, a court cannot issue preliminary injunctive relief with respect to prison conditions unless that relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Absent a showing of *ongoing* harm, a court may not enter preliminary injunctive relief under the PLRA. *Id.* The Court also must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.* The PLRA specifically requires that federal courts must "respect the principles of comity" described in the PLRA, under which a court may not order "any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless (i) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right." *Id.*; 18 U.S.C. § 3626(a)(1)(B). If a court issues preliminary injunctive relief, that relief "shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2).

**A.    Plaintiff has no likelihood of success on the merits.**

> **1.    Plaintiff cannot obtain a preliminary injunction because he transferred out of NRC and is inadequate to represent the proposed class.**

Defendant demonstrates above that Plaintiff cannot obtain injunctive relief purely on his

own behalf because he has been transferred out of NRC, he lacked standing when he filed, he failed to exhaust his remedies, and his claims for injunctive relief are moot and cannot be saved by the "inherently transitory" exception. Plaintiff also cannot obtain preliminary relief as a member of the proposed class because his motion for class certification fails for the reasons discuss above.

Plaintiff's inability to pursue claims for injunctive relief individually or as representative of the proposed class also dooms his motion for a preliminary injunction, for the reasons described in *Retired Chi. Police Ass'n v. City of Chi.* 7 F.3d 584, 608 (7th Cir. 1993). In that case, a district court rejected a motion for class certification and motions for a preliminary injunction. *Id.* at 591. On appeal, the Seventh Circuit first affirmed the district court's denial of class certification, in part because the proposed representative plaintiffs were not adequate representatives. *Id.* at 591–99. The Seventh Circuit then went on to affirm the denial of preliminary injunctive relief because the proposed named plaintiffs had not demonstrated they had standing to bring claims on their own behalf, and also could not adequately represent the proposed class. *Id.* at 608–09. The same result applies here. Because Plaintiff cannot seek injunctive relief on his own behalf, and has failed to demonstrate his adequacy to represent the proposed class, he "cannot demonstrate a reasonable likelihood of success on the merits of its claims." *Id.* at 609; *see also Orr*, 953 F.3d at 501 (where a class cannot be certified, "the classes are *not* the proper parties" for the preliminary injunction analysis). Plaintiff's motion for preliminary injunction must therefore be denied.

### 2. Plaintiff cannot succeed on the merits of his ADA and Rehabilitation Act claims.

At the preliminary injunction stage, the burden is on Plaintiff to make a "strong showing" of entitlement to relief. *Ill. Republican Party*, 973 F.3d at 763. Plaintiff cannot make this showing because NRC is compliant with the terms of UFAS, and Plaintiff's arguments lack merit.

### a. UFAS applicability rules for detention facilities defeat Plaintiff's substantive claims.

Plaintiff argues in his preliminary injunction motion that he will prevail on the merits because NRC fails to comply with the substantive construction requirements in the 1991 Standards and UFAS. ECF 13 at 5. Plaintiff is wrong because these substantive requirements do not apply to NRC showers. A facility built between 1992 and 2010 meets ADA and Rehabilitation Act requirements if it complies with either UFAS or the 1991 Standards. *See* 28 C.F.R. § 35.151(c)(1). Here, NRC is compliant with the requirements of UFAS because UFAS does not impose specific substantive structural requirements on detention facility showers designed like those at NRC.

UFAS provides special compliance requirements for more than a dozen types of "occupancy classifications," setting out in detail which specific substantive standards those newly constructed structures must meet in order to be UFAS compliant overall. *See* UFAS § 4.1.4, Ex. 1, at 7 (for each such structure classification, buildings and facilities "shall comply with these standards to the extent noted in this section . . . unless otherwise modified by a special application section."). For example, with respect to "assembly" facilities, such as arenas and amusement parks, the areas required to comply with UFAS standards for the facility to be UFAS compliant overall are "[a]ll areas for which the intended use will require public access or which may result in the employment of physically handicapped persons." *Id.* § 4.1.4(4), Ex. 1, at 8.

A similar rule of application applies to "institutional occupancies where the occupants are under some degree of restraint or restriction for security reasons" including "jails," "prisons," and "[o]ther detention or correctional facilities." *Id.* § 4.1.4(9)(c). This rule provides that two categories of facility spaces within NRC must follow UFAS standards in for that facility to be UFAS compliant in general: (i) "5 percent of residential units available, or at least one unit, whichever is greater;" and (ii) "all common use, visitor use, or areas which may result in

employment of physically handicapped persons." *Id.* § 4.1.4(9)(c). Plaintiff does not challenge the extent to which NRC meets the requirements of subpart (i), nor could he, because 51 out of NRC's 932 cells are ADA accessible, two cells in each of the 24 cell houses and three infirmary cells, exceeding the applicable 5% requirement. And NRC cells do not generally contain showers at all, with the exception of three specialized care cells located in the infirmary. Rather, showers are generally located down the hall from prisoner residential units, and persons in custody must be specifically and individually escorted to showers by corrections staff. *See* Hunter Decl., Ex. 3, ¶¶ 20-25. This leaves Plaintiff without any chance of success on the merits unless subpart (ii) applies, which it does not.

By its terms, subpart (b) describes and applies solely to portions of a detention facility "which may result in employment of physically handicapped persons." UFAS § 4.1.4(9)(b), Ex. 1, at 10. In other words, it applies to (i) "all common use . . . which may result in employment of physically handicapped persons," (ii) "all . . . visitor use . . . which may result in employment of physically handicapped persons," and (iii) "all . . . areas which may result in employment of physically handicapped persons." *Id.*[4] None of these clauses applies to the NRC showers because such showers do not "result in employment of physically handicapped persons." *Id.*

Plaintiff may try to cast doubt on this straightforward interpretation of the regulatory text by arguing that the three clauses of subpart (b) are disjunctive—that is, they should be interpreted to refer to "[(i)] all common use, [(ii)] visitor use, or [(iii)] areas which may result in employment of physically handicapped persons." UFAS § 4.1.4(9)(c), Ex. 1, at 10. "Common use," Plaintiff

---

[4] The term "common use" is defined as follows: "refers to those interior or exterior rooms, spaces, or elements that are made available for the use of a restricted group of people (for example, residents of an apartment building, the occupants of an office building, or the guests of such residents or occupants)." UFAS § 3.1.5, Ex. 1, at 3. UFAS does not define the terms "visitor use" or "area." *Id.*

23

would argue, includes showers designed to be used by prisoners. This argument is insufficient to rescue Plaintiff's claim here. If it were correct, the use of disjunctive "or" with respect to the three clauses in subpart (b) would mean that UFAS compliance could be achieved by complying with *only one* of those clauses—"all common use, visitor use, **_or_** areas which may result in employment of physically handicapped persons." UFAS § 4.1.4(9)(c), Ex. 1, at 10 (emphasis added). For example, NRC would still be in compliance with UFAS overall so long as it maintained "visitor use" areas consistent with the substantive requirements of UFAS, even if it did not maintain prisoner showers consistent with the substantive requirements of UFAS. *Id.*

In sum, UFAS does not require that the NRC showers comply with any specific substantive requirements. Plaintiff therefore lacks any likelihood of success on the merits, and cannot obtain preliminary injunctive relief.

> **b.** **Plaintiff's remaining arguments are insufficient to justify the extraordinary relief they seek.**

Given the features of UFAS described above, Plaintiff's remaining arguments fail. At the outset, Plaintiff focuses his entire argument on his allegation that NRC showers do not comply with the structural requirements of the 1991 Standards. He largely ignores UFAS, and completely ignores that "[d]epartures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1). This alone shows that Plaintiff fails to bear his burden under the preliminary injunction standard.

Plaintiff relies on the expert report of Gary Keclik, who opines based on photographs and drawings that NRC facilities do not comply with the substantive requirements of the 1991 Standards. *See* Accessible Shower Review of Gary Keclik, ECF 40-5, at 1. But Mr. Keclik's work says nothing about whether these specific structural requirements *actually apply to NRC showers.*

*Id*. And for the reasons addressed above, they do not.

Plaintiff also cites to a handful of cases, none of which address the key issues before the Court today. Plaintiff says *Flora v. Dart*[5] and *Bennett v. Dart*[6] stand for the proposition that "mounted shower seats are required by the applicable federal accessibility standards." Mot. for PI, ECF 13, at 5. Neither case, however, says that the cited standards *actually apply to the showers at NRC*. *See Bennett*, 53 F.4th at 420; *Flora*, 2017 U.S. Dist. LEXIS 74915, at *4. Indeed, Bennett concerned a decision on a class certification motion, but said nothing at all as to the merits of that dispute. *Bennett*, 53 F.4th at 420.

Plaintiff also cites to *Clemons v. Dart*,[7] but that case is plainly distinguishable. *Clemons* concerned a jail structure in which an offender was assigned to a cell that "lacked grab bars near the toilet" and contained a "shower compartment in the room [which] also had a door that was only twenty-eight inches wide, rather than the minimum thirty-two inches required by the ADA, and lacked both a mounted shower seat and grab bars." *Clemons*, 168 F. Supp. at 1064. The case also concerned a second cell in which a multi-person living space included a "group shower room" that "lacked a mounted shower seat and grab bars." *Id.* at 1064. The "shower" compartments and rooms at issue in Clemons were therefore directly incorporated into the cells of that jail facility, making them part of the jail's "residential units." Those showers were therefore required to comply with the structural requirements of UFAS by the terms of the rules implementing the ADA. Here, the shower facilities are not incorporated into NRC "residential units" at all—as described above, they are located down the hall from NRC residential unit cells, and cannot be accessed by offenders

---

[5] 2017 U.S. Dist. LEXIS 74915, at *4 (N.D. Ill. May 17, 2017).

[6] 53 F.4th 419, 420 (7th Cir. 2022).

[7] 168 F. Supp. 3d 1060 (N.D. Ill. 2016).

at NRC at all unless those offenders are specifically escorted to the shower locations by corrections security officers. *See* Hunter Decl., Ex. 3, ¶¶ 21–25. NRC showers are therefore not subject to the specific structural requirements of UFAS, unlike the showers at issue in *Clemons*.

Finally, Plaintiff also cites *Shotz v. Cates*, 256 F.3d 1077, 1078 (11th Cir. 2001), and *Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998), but these cases concern the applicability of UFAS and the 1991 Standards to *courthouses*, not to detention facilities such as NRC. They are therefore irrelevant to the question before the Court.

### B.   Neither Plaintiff nor the class will not suffer irreparable harm absent an injunction.

To obtain a preliminary injunction Plaintiff must demonstrate "that irreparable harm [i]s likely" to result from the lack of the injunction he seeks, and that there is no adequate remedy at law. *Orr*, 953 F.3d at 502. "This requires more than a mere possibility of harm." *Id.* (internal quotations omitted). Rather, Plaintiff must demonstrate that "he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.*

For the reasons described above, Plaintiff cannot make this showing with respect to his individual claim, since he has already been transferred out of NRC. Consequently, to obtain a preliminary injunction, he must first prevail in his motion for class certification, and then demonstrate that irreparable harm for which there is no adequate remedy at law to the class is likely absent an injunction. *See Retired Chi. Police* Ass'n, 7 F.3d at 608–09.

Plaintiff admits that the existence of a "formal process for wheelchair-users to be assisted pending an eventual request for permanent injunctive relief" would be enough to prevent ongoing harm. *See* Update, ECF 40, at 1. This judicial admission dooms Plaintiff's motion, because the unrebutted evidence in the record demonstrates that *such a formal process already exists*. Lidia Diaz, the IDOC's 30(b)(6) designee, testified that medical providers at NRC make "mobility

assessments" that include a determination of the extent to which an individual can accomplish day-to-day tasks on their own. *See* Diaz Dep., Ex. 4, at 57:4–5; 71:10–13. Typically, if a person is not able to perform daily functions without assistance, they would be placed in a housing unit adjacent to the infirmary, where assistance with showering could be provided. *Id.* at 57:13–19. The process protects against any irreparable harm for putative class members housed in the infirmary.

A person who is housed outside the infirmary, however, also has the ability to request assistance with showering, if they turn out to be unable to perform routine functions. In response to a question as to whether "in the housing tiers, for a wheelchair-assisted person, there's always a medical person that will assist the person in and out of the shower," Ms. Diaz stated "if they cannot [shower] or if it becomes that they are unable [to shower] at some point and they request for the nurse, the nurse will be called to the unit." *Id.* at 80:4–13. Ms. Diaz also responded "yes" when asked if "a detainee who's wheelchair-assisted at any time who's housed in the housing tier" can receive assistance getting "into and out of the shower" and "transferring out of their wheelchair into the shower chair inside the shower" on request. *Id.* at 80:14–20. This testimony shows that Defendant is already implementing the measures Plaintiff says would remedy any ongoing harm while this case is pending, meaning that Plaintiff cannot show "that irreparable harm [i]s likely" to the class absent an injunction. *Orr*, 953 F.3d at 502.

### C. The balance of equities and public interest weigh against an injunction here.

Where, as here, the government is the party opposing preliminary injunctive relief, the balance of the equities and public interest factors blend together. *Cf. Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of harms and public interest factors "merge when the Government is the opposing party."). This analysis requires Plaintiff to demonstrate that "the harm the plaintiff will suffer without an injunction" exceeds "the harm the [government] will suffer with one." *Harlan v.*

*Scholz*, 866 F.3d 754, 758 (7th Cir. 2017). "This balancing process involves a sliding scale approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Here, Plaintiff has no likelihood of success on the merits for the reasons described above. Consequently, he must make an overwhelmingly strong showing that the balance of equities and public interest weigh in his favor to obtain the relief he seeks. *Id.* And he cannot make that showing. At the outset, the Court never acquired jurisdiction over this case because Plaintiff lacked Article III standing on the day he filed, as shown above. As a result, any injunction would have the effect of "jettison[ing] the last vestiges of the case-or-controversy requirement in class actions," and "throw[ing] away a venerable constitutional rule just to retain a replaceable champion." *Holmes*, 854 F.2d at 233. This is of particular concern because considerations of federalism and comity weigh especially heavily when considering the administration of a state prison system. As the Supreme Court has noted, "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. . . . Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems." *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973); *accord Turner v. Safley*, 482 U.S. 78, 85 (1987) ("where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities"'); *Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("Federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States."). Given the jurisdictional infirmities in Plaintiff's case, these considerations weigh especially heavily here.

Plaintiff never confronts these issues in his preliminary injunction motion. Instead, he relies entirely on the purported modesty of his request for an order requiring that wheelchair users be provided assistance in transferring in and out of shower chairs. *See* Mot. for PI, ECF 13, at 7. This argument falls short because (a) NRC already has procedures that provide the relief he requests, and (b) any relief entered in the absence of subject matter jurisdiction would cause harm to principles of state and federal comity that outweigh any benefits to Plaintiff or the proposed class.

In sum, Plaintiff has not made his required strong showing of entitlement to a preliminary injunction. His motion must therefore be denied.

## CONCLUSION

For all these reasons, this Court should deny Plaintiffs' Motion For Class Certification and Motion for Preliminary Injunction.

Dated: March 15, 2024

KWAME RAOUL
Illinois Attorney General

Respectfully submitted,

Defendant Latoya Hughes

By: s/ *Kevin Fitzgerald*
Assistant Attorney General
Kevin Fitzgerald
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle
Chicago, Illinois 60603
(773) 590-6998
*Kevin.Fitzgerald@ilag.gov*