IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE WESTMORELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-cv-14044 |
| | ) | |
| LATOYA HUGHES, Acting Director of the Illinois Department of Corrections, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) ) | |

## ORDER

For the reasons set forth in the Statement below, the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) [17] is granted and this case is dismissed without prejudice for lack of subject matter jurisdiction. The plaintiff's motions to certify class [6] and for preliminary injunction [13] are denied as moot. Civil Case Terminated.

## STATEMENT

Since 2019, plaintiff Eugene Westmoreland has relied on a wheelchair for mobility due to a polio-induced disability affecting his legs. Following his conviction for various crimes, an Illinois court sentenced Mr. Westmoreland in September 2023 to three-and-a-half years in the custody of the Illinois Department of Corrections ("IDOC").

Mr. Westmoreland filed his complaint in this case in September 2023 while detained at the Cook County Jail following his conviction and sentencing. In the complaint, he alleges that, "in the coming days," as of the date of the filing of the complaint, he "will be transferred to the Northern Reception and Classification Center ("NRC")." Compl. ¶ 11. He further alleges that the NRC is Illinois' main adult prisoner intake and processing center, meaning IDOC temporarily detains and evaluates prisoners there before transferring them to the prisons where they serve the remainders of their sentences. Mr. Westmoreland's claim against Latoya Hughes, the acting director of the IDOC, is that the NRC's shower facilities are not compliant with the Americans with Disabilities Act ("ADA"), and when he filed his complaint, he anticipated that this lack of compliance would deprive him of the ability to safely and comfortably shower while housed at the NRC, *i.e.*, the ability to shower on the same basis as non-mobility-disabled individuals.

Mr. Westmoreland seeks to represent a class of similarly impaired individuals who are or will be held at the NRC and who have also been prescribed a crutch, cane, or wheelchair by a prison medical provider. To that end, he filed a motion to certify the class soon after filing his complaint, ECF No. 6. He does not seek money damages for his claim or on behalf of the class—only declaratory and injunctive relief. Mr. Westmoreland has also moved for a preliminary

injunction requiring the IDOC to establish a formal process for wheelchair users to request and obtain assistance from medical staff when showering at the NRC.

In the weeks following the filing of Mr. Westmoreland's complaint, circumstances relating to his incarceration—and consequently this litigation—changed. As Mr. Westmoreland anticipated, IDOC transferred him from Cook County Jail to NRC on September 26, 2023, two days after he filed his complaint. Mr. Westmoreland was housed at NRC until November 9, 2023, at which point IDOC transferred him to Taylorville Correctional Center. *See* Def.'s Brief in Opp. to P.'s Update to Motions for Class Cert. and Prelim. Inj. at 5, ECF No. 43. According to the IDOC prisoner locator (https://idoc.illinois.gov/offender/inmatesearch.html), Mr. Westmoreland remains at Taylorville.

While the plaintiff's two motions (for class certification and preliminary injunction) were pending, Director Hughes filed a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and, alternatively, pursuant to Rule 12(b)(6) for failure to state a claim. With respect to the 12(b)(1) motion, Director Hughes argues that Mr. Westmoreland lacked standing when he brought the instant suit because he filed it before he was incarcerated at NRC. The Director also contends that the plaintiff's claim is now moot because he is no longer detained at NRC. The premise of the Director's alternative ground that the complaint fails to state a claim is that the plaintiff did not satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement, 42 U.S.C. § 1997e(a), before filing suit. ECF No. 17. Extensive briefing on the defendant's motion to dismiss and the plaintiff's motions for class certification and preliminary injunction, and an evidentiary hearing, ensued.

## **ANALYSIS**

Director Hughes has challenged the Court's subject-matter jurisdiction over Mr. Westmoreland's claim on two grounds: standing and mootness. Both doctrines implicate constitutional limitations on the Court's ability to preside over the case. *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 488-89 (7th Cir. 2004) ("Under Article III of the Constitution, the judicial power of the United States extends only to cases and controversies. This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes. Concepts such as standing, mootness, and ripeness assure that cases will be litigated by those having an actual stake in the outcome and that decisions will be made in an arena of real and substantial problems to be redressed by specific solutions." (cleaned up)). The Court must decide whether either doctrine bars it from considering Mr. Westmoreland's claim as a threshold matter. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In determining subject matter jurisdiction, the "court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). It "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Id.* (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)). As the party invoking the Court's jurisdiction, Mr. Westmoreland bears the burden of establishing that it exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To have standing, a plaintiff must meet three prerequisites. First, the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and

2

particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (1992) (cleaned up). Second, there must be a causal connection between the injury and the complained-of conduct, so that the injury is fairly traceable to the defendant's actions. *Id.* Third, it must be likely—not merely speculative—that a ruling in favor of the plaintiff will redress the injury. *Id.* at 561. "The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists." *Warth*, 422 U.S. at 499 n.10.[1]

I. **Standing: Imminent Future Injury**

The Court finds that Mr. Westmoreland had standing to pursue his claim at the time he filed his complaint. Director Hughes argues, "Plaintiff lacked standing to sue when he filed this lawsuit because there was no actual or imminent harm or injury when he had yet to experience any alleged lack of accommodation at NRC. . . . A plaintiff cannot file suit in anticipation of experiencing a wrong he has no way of knowing will actually occur." Def.'s Memo. at 1, ECF No. 23. That argument is not persuasive. Courts frequently exercise jurisdiction in cases seeking prospective injunctive relief to prevent emerging harms, so long as it is not too hypothetical or speculative that those harms will materialize. In fact, the Seventh Circuit considers "a small probability of injury [to be] sufficient to create a case or controversy." *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993).

The Court must give Mr. Westmoreland's complaint—and the nature of the harm it alleges—due credence at this stage. To reiterate its pertinent factual allegations: (1) Mr. Westmoreland was sentenced to the custody of IDOC for a number of years, (2) he was in jail awaiting intake and processing, (3) he was to be transferred "in the coming days" to the NRC for intake and processing prior to being sent to a more permanent facility, and (4) the NRC has non-ADA compliant shower facilities that would prevent him from showering. Based on these factual allegations, this is not the sort of case that "depends on a lengthy chain of speculation as to what the future has in store." *Ernst & Young v. Depositors Econ. Protec. Corp.*, 45 F.3d 530 (1st Cir. 1995). Although the Supreme Court has warned that "'imminence' is . . . a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is . . . '*certainly* impending,'" *Lujan*, 504 U.S. at 564 n.2, it is not a stretch to infer that, once sentenced to imprisonment in IDOC, Mr. Westmorland would be imminently transferred from the Cook County Jail to NRC and would need to shower at some point during his detention there. Denial of the ability to shower was "certainly impending" when Mr. Westmoreland filed his complaint.

II. **Mootness**

Standing resolved, the Court turns to a related doctrine: mootness. "A corollary to th[e] case-or-controversy requirement is that 'an actual controversy must be extant at all stages of

---

[1] Director Hughes does not have a ripeness argument, however. "Because ripeness is 'peculiarly a question of timing,' a court determines ripeness as of the date of its decision, not the date the lawsuit was filed." *Church of Our Lord and Savior Jesus Christ v. City of Markham, Illinois*, 913 F.3d 670, 677 (7th Cir. 2019). The claim has certainly ripened since the filing of the complaint, considering IDOC sent Mr. Westmoreland to NRC and he tried to shower while there.

review, not merely at the time the complaint is filed.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

The Court concludes that Mr. Westmoreland lacks a personal stake in the outcome of this litigation. He seeks only prospective injunctive and declaratory relief for harms that have already occurred due to conditions to which he is no longer subject because of his November 2023 transfer out of NRC. If the Court granted the relief he requests, it would not impact him in a concrete, personal, and legally cognizable manner. Thus, unless some exception to the mootness doctrine applies, the Court lacks subject matter jurisdiction.

### A. Capable-of-Repetition-Yet-Evading-Review Doctrine

One possible response to Director Hughes' mootness argument could be the "capable-of-repetition-yet-evading-review" doctrine, which applies where two conditions are simultaneously present: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998). The Seventh Circuit has also explained that, "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred" to the first prison. *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988).

The first element, pertaining to the brevity of the duration, is present here. The transitory nature of an inmate's detention at NRC, which is merely a temporary intake and processing center, makes it highly unlikely that a case concerning conditions there could reach resolution before the plaintiff-prisoner is transferred to a more permanent facility; Mr. Westmoreland, for instance, was only there for a little over a month. As for the second element, however, Director Hughes is correct that there is no reason to suspect that Mr. Westmoreland will be retransferred to NRC any time soon. The second element of the capable-of-repetition doctrine is not met. As a result, the exception does not apply.[2]

Before continuing, it bears noting that the "capable-of-repetition-yet-evading-review" doctrine is not quite an "exception" to mootness per se. That is, in a case where the doctrine applies, the court is not maintaining subject matter jurisdiction *despite* the mootness of the plaintiff's claim; rather, the doctrine applies to show that a claim is actually not moot—in that the plaintiff still has a personal stake in the case's outcome—even though the plaintiff is not necessarily subject to the complained-of condition at the time of the court's decision. Since this doctrine does not apply here, there is no saving Mr. Westmoreland's *personal* claim from mootness.

---

[2] Understandably, Mr. Westmoreland does not lean on this doctrine in his briefing. Nevertheless, the Court examines it as part of its duty to independently evaluate its subject matter jurisdiction.

4

B.    **Inherently Transitory Exception**

A different doctrine, however, is truly an "exception" to mootness, in that it furnishes a court with subject matter jurisdiction over a case despite the plaintiff's lack of a personal stake in its outcome. The Supreme Court called it the "inherently transitory" exception in *Gerstein v. Pugh*, 420 U.S. 103 (1975). The inherently transitory exception allows a named plaintiff in a class action to continue prosecuting the action even though intervening circumstances may have mooted his or her personal claim following the inception of the lawsuit. *Id.* The Supreme Court has explained the nature of the problem that the exception is meant to solve:

> The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course. A plaintiff might seek, for instance, to bring a class action challenging the constitutionality of temporary pretrial detentions. In doing so, the named plaintiff would face the considerable challenge of preserving his individual claim from mootness, since pretrial custody likely would end prior to the resolution of his claim.

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013).

The Seventh Circuit has chronicled the development of the doctrine since *Gerstein*:

> A number of subsequent Supreme Court cases have reiterated and clarified the exception to the mootness doctrine announced in *Gerstein*. *See, e.g.*, *Swisher v. Brady*, 438 U.S. 204 (1978); *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991). In *Swisher*, the Court affirmed a district court's decision to certify a class of juveniles involved in the juvenile court system despite the fact that the named plaintiff's claims were moot at the time of the decision. The Court in *Swisher* relied on *Gerstein*'s predecessor, *Sosna v. Iowa*, 419 U.S. 393 (1975), to find:
>
>> There may be cases in which the controversy involving the named plaintiff is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether certification can be said to 'relate back' to the filing of the complaint may depend on upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.
>
> *Swisher*, 438 U.S. at 213, n. 11. In *McLaughlin*, the Court relied on the "inherently transitory" exception to find, "that the class was not certified until after the named plaintiffs' claims had become moot

5

> does not deprive [the Court] of jurisdiction," in a case challenging the denial of a prompt probable cause hearing for inmates in the county jail.

*Olson v. Brown*, 594 F.3d 577, 581 (7th Cir. 2010).

The Seventh Circuit then extrapolated from the Supreme Court's case law a two-element test "for the 'inherently transitory' exception to apply: (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* at 582. Unlike the capable-of-repetition-yet-evading-review doctrine, there is no need for a proposed named plaintiff to show that he or she will be personally subject to the alleged deprivation again. And in terms of timing, the plaintiff must "file[] for class certification while a party to a live controversy" to be eligible to proceed under this exception. *Id.* at 580.

The Court finds that there is a strong basis to conclude that both elements of the test are met. Indeed, Director Hughes concedes the first step. Def.'s Reply at 4, n.1, ECF No. 23. The NRC, as a reception and intake center for Illinois inmates, is a transitional facility where inmates may spend only a few weeks or months depending on myriad factors;[3] any proposed named plaintiff's claims about conditions at the NRC, therefore, are unlikely to remain live long enough for class certification. Further, the complaint alleges, and the evidentiary record bears out, that individuals who depend on wheelchairs for mobility are constantly being transferred in and out of the NRC, so there is a strong basis to suspect that the alleged deprivations will recur as those individuals attempt to use the NRC shower facilities. Finally, Westmoreland moved for class certification on October 3, 2023, before the transfer rendered his personal claim moot, so there is no issue with respect to timing.

There is one wrinkle, however. Director Hughes argues that even if these requisites are met, Mr. Westmoreland is not a suitable class representative because he is subject to an exhaustion defense under the PLRA. "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . ., then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974). Therefore, according to Hughes, Mr. Westmoreland is ineligible to proceed as a class representative and thus effectively precluded from relying on the inherently transitory exception for continued subject matter jurisdiction, which must exist at all stages of litigation. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).[4] If the Court determines that he would not be eligible to

---

[3] There is evidence in the record suggesting that the average stay at NRC is 24 days. Pl.'s Post-Hearing Brief at 2, ECF No. 56-1. Mr. Westmoreland was at the NRC for 42 days (September 26 to November 9).

[4] Administrative exhaustion under the PLRA is not jurisdictional in the typical case. *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). It is not jurisdictional here either, except insofar as it bears on Mr. Westmoreland's ability to maintain a class action, which itself bears on the availability of the inherently transitory exception to mootness.

represent the interests of the class, all that he would have left to assert would be his personal claim for which he seeks prospective injunctive relief. But that claim is, as discussed above, moot.

The structure of the Court's subject matter jurisdiction analysis thus resembles a set of nesting dolls: the mootness inquiry contains an "inherently transitory" inquiry, which in turn contains a class certification and representation inquiry, which in turn contains a PLRA exhaustion inquiry.[5] Put differently, if (1) it is arguable that Mr. Westmoreland failed to exhaust available administrative remedies as required by the PLRA and (2) that would be a unique defense as to him, then he is yanked out of the shelter provided by the inherently transitory exception, left only with his moot personal claim.

### *The Extent to Which Mr. Westmoreland is Subject to a PLRA Exhaustion Defense*

"By its plain terms, the PLRA requires prisoners to exhaust administrative remedies before filing suit; a 'sue first, exhaust later' approach is not acceptable." *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see also Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023) ("A prisoner must exhaust their claims before commencing litigation."). Through this requirement, "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Supreme Court has made it clear that exhaustion is mandatory and must be rigorously enforced—there can be no equitable or otherwise-judge-made exceptions read into the textual requirement. *See Ross v. Blake*, 578 U.S. 638-40 (2016).

There is, however, the textual reservation that prisoners need not pursue or exhaust administrative remedies unless they are "available" to them. "Congress made clear in § 1997e(a) that prisoners only have to exhaust available remedies, not remedies that are unavailable." *Hacker*, 62 F.4th at 1078 (citing 42 U.S.C. § 1997e(a)). The Supreme Court has laid out three situations in which an administrative remedy may be considered unavailable under the PLRA: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *e.g.*, "a prison handbook directs inmates to submit their grievances to a particular administrative office— but in practice that office disclaims the capacity to consider those petitions," (2) when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

---

[5] The PLRA exhaustion inquiry, as discussed below, in turn contains an "availability" inquiry.

Here, Mr. Westmoreland concedes that he never tried to pursue administrative remedies, much less exhaust them, before filing suit. Rather, he advances three principal arguments for why administrative remedies were unavailable to him at the time he filed the instant action. First, he argues that "[s]ince the complaint was filed before Westmoreland entered the IDOC and the grievance procedure applies only to 'offenders assigned to' IDOC correctional facilities, defendant fails to demonstrate Westmoreland had available administrative remedies prior to entering the IDOC." Pl.'s Reply at 9, ECF No. 46 (citing 20 Ill. Admin. Code § 504.800). That is, since he filed a lawsuit about conditions at the NRC before he was allowed to file any grievances about the NRC (because he had not arrived there), there were no administrative remedies available to him at the time, so he did not need to pursue or exhaust any.

As Director Hughes points out, "a prisoner must file complaints and appeals in the place, and **at the time**, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025 (emphasis added). The parties agree that IDOC requires prisoners to be assigned to the facilities about which they have a grievance before being permitted to grieve about them. Illinois' rules for when a prisoner has standing to file an administrative grievance are thus, in a sense, stricter than the Article III standing rules applied by this Court; a prisoner may have constitutional standing to pursue a claim about an issue at a facility to which he has not been transferred (*i.e.,* when transfer is "imminent"), but Illinois requires that he wait until actually assigned there to pursue administrative remedies for conditions there.

The Court is not persuaded that a plaintiff can circumvent the PLRA's exhaustion requirement by simply eschewing the state's timing requirements for filing a grievance. Consider, for example, a prisoner-plaintiff who seeks relief from some condition at the prison in which he is housed, but the prison's procedures only make grievance forms available starting around 10:00 a.m. each day. A plaintiff cannot file a lawsuit on the first day of his detention at the prison at 8:00 a.m., arguing that there were no forms available to him at the time of the lawsuit. Indeed, just as there may be periods where the prisoner-plaintiff must sit on his claim while waiting for the prison to investigate and adjudicate his grievance or appeal after it is filed, so too must he occasionally wait for the proper time to file it in the first place. Just because a claim has ripened in the constitutional standing sense does not mean the plaintiff is entitled to pursue it immediately when there exists a statutory exhaustion prerequisite. Finally, there is nothing inherently unreasonable about IDOC's policy of requiring prisoners to be present at the facilities about which they grieve; to the contrary, without such a policy, prison administrators would potentially be inundated with anticipatory grievances based on speculation and rumor rather than actual experience.

Second, Mr. Westmoreland argues that administrative remedies were unavailable because no one could exhaust administrative remedies while detained at the NRC. Pl.'s Post-Hearing Brief at 2, ECF No. 56-1 ("It is unlikely any wheelchair-user housed in the NRC will stay long enough to exhaust available administrative remedies."). Beyond his own experience, he also provided evidence that other inmates before him tried grieving the issue to no avail. But this is an argument that the administrative grievance process was futile, not that it did not exist, and there is no futility exception to the PLRA. *Perez v. Wisconsin Dep't of Corr.,* 182 F.3d 532, 536-37 (7th Cir. 1999) ("No one can **know** whether administrative requests will be futile; the only way to find out is to try.") (emphasis in original). What's more, there is evidence in the record—specifically, the testimony of ADA Compliance Officer Smith—suggesting that at least **some** ADA-related grievances are filed and resolved at NRC. That means that remedies are, by definition, at least

available, though whether they will ultimately bring relief is not the issue. *See Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022) (citing *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021), cert. denied sub nom; *Green Haven Preparative Meeting v. New York State Dept. of Corrections and Community Supervision*, 142 S. Ct. 2676 (2022) (the proof required to show that a remedy is available is "low" and requires only "the *possibility* of some relief")). Furthermore, Director Hughes argues that there is reason to believe that even if officials deny a wheelchair user's grievance about conditions at NRC on the grounds that the user has since been transferred out of NRC, the prisoner can (and must) still exhaust that administrative remedy. *See Salley v. Parker*, No. 18-CV-5700, 2020 WL 4736412, at \*7-8, \*11 (N.D. Ill. Aug. 14, 2020) (explaining NRC's grievance process, including details about how to pursue an emergency grievance and that a prisoner can continue pursuing the remedy even after leaving the NRC).

Third, at one point, Mr. Westmoreland testified that he tried to obtain grievance forms while at NRC but was ignored by the officials. Even if that were true, it would not change the fact that he filed suit before he arrived at the NRC; a prisoner cannot file a lawsuit, ***then*** try to exhaust, and ***then*** claim that the administrative grievance process was unavailabile. *See Perez*, 182 F.3d at 536-37 ("As for the possibility that administrative remedies could be declared futile *ex ante*, without ever being tried: what would be the point of asking judges to be seers? Then the simplicity of § 1997e(a) would be lost, and instead of requiring exhaustion of administrative remedies it would lead to guesswork about counterfactual situations."). Here, Mr. Westmoreland needed to at least ***try*** to file a grievance before filing his suit. Accordingly, Mr. Westmoreland is subject to a strong exhaustion defense.

### ***Whether a Class Action Can Be Maintained in Light of the Exhaustion Issue***

Having found that Mr. Westmoreland is subject to a serious exhaustion defense, there remains the question of whether the exhaustion defense is "unique" to him. It is worth examining the relationship between class action procedure and the PLRA's exhaustion requirement. The Seventh Circuit does not appear to have taken up the issue. But several district courts in this Circuit have "analogized the exhaustion requirement in PLRA class actions to the exhaustion requirement in Title VII employment discrimination class actions," and found that, once a class is certified, the PLRA's exhaustion requirement is satisfied as long as one class member has grieved the issue with the prison and exhausted it, *see, e.g.*, *Lewis v. Washington*, 265 F. Supp. 2d 939, 941-42 (N.D. Ill. 2003); *Meisberger v. Donahue*, 245 F.R.D. 627, 629 (S.D. Ind. 2007) (collecting cases). The rationale is that this procedure satisfies the PLRA's purpose of putting prison officials on notice of the issue and giving them the opportunity to address it before litigation commences. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The Court agrees that exhaustion defense can be resolved on a class-wide basis, but some member of the putative class, if not the named plaintiff, must have pursued and exhausted the grievance process. Here, no putative class member—mobility impaired inmates that are currently housed or soon-to-be housed at NRC—has been alleged to have grieved and exhausted this particular issue ***before*** Mr. Westmoreland filed suit.[6] As such, not only is Mr.

---

[6] Mr. Westmoreland has also supplemented the record with declarations with the following evidence: another wheelchair-user at NRC, Ron Browning, filed a grievance on February 4, 2024, alleging that the NRC showers are not ADA accessible. Three weeks after collecting the grievance, the grievance officer at NRC reviewed Mr. Browning's grievance and decided to return it because

Westmoreland a poor fit for class representative status; nobody is a good fit. As a result of the timing of Mr. Westmoreland's complaint, it is not only Mr. Westmoreland who is subject to an exhaustion defense, but the whole of the putative class is as well. The "inherently transitory" exception "is based on the fiction that once a class is certified, the class obtains a legally cognizable interest independent of that of the named plaintiffs, and the class claims thus preserve the adversarial interest needed for the invocation of jurisdiction." *Lewis*, 265 F. Supp. 2d at 943. That fiction cannot be employed under these circumstances.

Accordingly, the Court finds that it lacks subject matter jurisdiction over this case because Mr. Westmoreland's claim for injunctive and declaratory relief is moot, and no exception applies.

\* \* \*

Before concluding, it bears acknowledging that Mr. Westmoreland has been caught on the horns of a dilemma while seeking to obtain relief that could potentially help others who come to NRC after him. He either must have (1) waited until he arrived at NRC to file (and then reach final resolution on) an ADA grievance, in which case his federal claim may have been mooted by the time he satisfied the PLRA's exhaustion requirement, or (2) filed his lawsuit and a motion for class certification before leaving NRC to preserve the Court's subject matter jurisdiction but risked being subject to a likely insuperable exhaustion defense.

But that is a function of several moving parts, all working against a prisoner's ability to obtain prospective relief for a problem that he faced for a short while but to which he is no longer subject. First, the PLRA does not have a mootness, fairness, or futility exception, and the Court is bound to follow Congress's mandate, even if it diminishes otherwise valid statutory rights of prisoners under the ADA. While, for example, some states allow for the tolling of limitations periods for 42 U.S.C. § 1983 claims while prisoners complete administrative grievance processes, *Robinson v. Grazyk*, No. 18 C 3317, 2019 WL 3801864, at \*2 (N.D. Ill. Aug. 13, 2019), there is no such mootness "tolling" exception under Article III's cases-or-controversies requirement or an exception under the PLRA for transitory harms. Second, there is a clear mismatch between the nature of Mr. Westmoreland's harm (retrospective) and the relief he seeks (prospective). It is not uncommon for a plaintiff to be denied the opportunity to seek such relief where he could otherwise seek retrospective damages. *See, e.g.*, *Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief).

If there is a proper order of operations to bring such a claim for injunctive relief on a class-action basis after the plaintiff's personal claim expires, it must be PLRA-compliant. Perhaps, if a wheelchair-bound inmate at NRC followed and exhausted the grievance process, only to find that, before it complete, he was transferred out of NRC and thus his individual claim expired, then he could possibly raise the argument that it was "impossible for him to *move* successfully for class certification prior to the expiration of his claim." *Trotter v. Klincar*, 748 F.3d 1177, 1184 (7th Cir.

---

he was transferred out of NRC, *i.e.*, his request was moot. The grievance response from IDOC says, "Stateville/NRC is unable to address ADA concerns because grievant transferred." ECF No. 52-1. Again, however, Mr. Westmoreland cannot rely on others to exhaust for him after he filed suit.

1984) (emphasis in original). The *Trotter* court acknowledged that the timing of the proceedings below belied the notion that that the appellant in that case "could not even move for certification" before his claim was mooted, possibly implying that such an argument may have sufficient footing where the facts allow such a finding. That, however, is not an argument available to Mr. Westmoreland, who filed suit before attempting to exhaust, and must therefore wait for a suitable case in which to be tested.

Dated: May 23, 2024

                                                    John J. Tharp, Jr.
United States District Judge